# Attachment to Notice of Compliance
# **Defendants' Insurance Policies**
# SECTION 2

# Environmental Impairment Liability Insurance Policy
Claims Made and Reported Coverage


**ZURICH**

This is a claims made and reported policy. Notice of a potential "claim" is not a "claim" and does not trigger coverage under the policy. This policy has certain provisions and requirements unique to it and may be different from other policies you may have purchased. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. Words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section II).

"Claim(s)" must first be made against an "insured" during the "policy period", and "claim(s)" must be reported, in writing, to us during the "policy period", the automatic extended reporting period or an extended reporting period, if applicable.

The payment of "claim expense(s)", including defense costs, reduces the limits of insurance. If the policy limit is exhausted, we shall not be liable for "claim expense(s)" or for the amount of any judgment or settlement.

In consideration of the payment of premium and your undertaking to pay the Deductible as described herein, in reliance upon the statements in the Application made a part hereof, and subject to the Limits of Liability of this Insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this policy, we agree with you as follows:

## I. INSURING AGREEMENT

We will pay on behalf of an "insured" any "loss" caused by a "pollution event" on, at, under or coming from a "covered location" that an "insured" is legally obligated to pay as a result of a "claim" first made against the "insured" during the "policy period" provided that the "claim" is reported to us during the "policy period", or any applicable extended reporting period.

### DEFENSE

We shall have the right and duty to assume the adjustment, defense and settlement of any "claim" brought by or on behalf of a third party seeking payment for "loss(es)" to which this insurance applies. "Claim expense(s)" reduces the applicable Limits of Liability set out in the Declarations as described in LIMITS OF LIABILITY AND DEDUCTIBLE (Section VI.).

Our duty to adjust, defend and settle all "claim(s)" to which this insurance applies, pending and future, ends when the applicable Limits of Liability have been tendered into court or exhausted by payment of "claim expense(s)" or "loss(es)".

## II. DEFINITIONS

A. "Automobile" means a land motor vehicle, trailer or semi-trailer designated for travel on public roads including any machinery or apparatus attached thereto.

B. "Bodily injury" means physical injury, sickness, disease, mental anguish, or emotional distress sustained by any person, including death resulting therefrom.

C. "Claim(s)" means any demand received by an "insured" alleging liability or responsibility on the part of the "insured" for "loss(es)" caused by a "pollution event" on, at, under or coming from a "covered location".

D. "Claim expense(s)" means:

  1. fees charged by an attorney designated by:

    a. us; or

    b. the "insured" with our prior written consent; and

  2. all other fees, costs and expenses resulting from the defense, settlement and appeal of a "claim" if incurred by us or the "insured" with our consent including interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the policy.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights herein may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

However, "claim expense(s)" does not include the salaries or expenses of regular employees or officials of ours or the "insured's" or expenses of our adjusters. The "insured" shall be allowed $250 per day but no more than $5,000 in total allowable expenses for the compensation to its principals, partners, officers, directors, or employees for personally attending any legal proceeding at our request. These allowable expenses shall not reduce the applicable Limits of Liability and Deductible set out in the Declarations.

E.  "Cleanup costs" means the necessary expenses incurred in the investigation, removal, remediation, neutralization or immobilization of contaminated soil, surface water, groundwater, or other contamination.

F.  "Closure plan" or "post closure plan" means the written documents required by the Code of Federal Regulations, 40 CFR Parts 260 - 299 (revised as of July 1, 1997), including any amendments, or by similar state laws and regulations, which require the partial or final closure of post closure of a unit, facility or location.

G.  "Covered location(s)" means the property(ies) shown in the Declarations or applicable Endorsement.

H.  "Emergency action" means the reasonable and necessary costs incurred to avoid an imminent and substantial endangerment to the public health or welfare of the environment.

I.  "Insured" means:

   1.  you or your;

   2.  any current or former principal, partner, officer, director, employee, contract employee or leased personnel while acting within the scope of their employment or written agreement with an "insured";

   3.  the heirs, executors, administrators, assigns and legal representatives of each "insured" in the event of death, incapacity, or bankruptcy; or

   4.  any other person or entity endorsed onto this policy as an "insured".

J.  "Loss(es)" means:

   1.  compensatory damages or legal obligations arising from:

      a.  "bodily injury"; or

      b.  "property damage"; and

   2.  related "claim expense".

K.  "Mediation" means any non-binding intervention by a neutral third party.

L.  "Natural resource damage(s)" means the sum of:

   1.  reasonable direct costs, including costs of assessment, associated with action necessary to restore (including replacement) the natural resource to its baseline condition prior to the "pollution event", and

   2.  the "use value" of injury to or destruction of natural resources, including the land, surface water, groundwater, subsurface strata, air, fish, wildlife, or biota between the time of a "pollution event" and restoration of the natural resources injured by the "pollution event".

"Use value" means the value of the natural resources to the public attributable to the direct use of the services provided by the natural resources.

M.  "Policy period" means the period set forth in the Declarations, or any shorter period arising:

   1.  from cancellation or termination of this policy; or

   2.  with respect to a specific "covered location":

      a.  the deletion of such "covered location" from this policy by us upon your request; or

      b.  the sale, leasing to others, giving away, abandonment, or relinquishing of operational control of such "covered location" by the "insured".

N.  "Pollution event" means the discharge, dispersal, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

O.  "Property damage" means:

    1.  physical injury to or destruction of tangible property including the resulting loss of use thereof;

    2.  loss of use of tangible property that has not been physically injured or destroyed;

    3.  "cleanup costs"; or

    4.  "natural resource damage(s)".

P.  "Underground storage tank" means any tank(s) including associated underground piping connected thereto, that has at least ten (10) percent of its volume below the ground.

## III.  TERRITORY

The insurance afforded by this policy applies worldwide.  Where suits are brought or "claim(s)" are made outside the United States of America and its territories and possessions, Puerto Rico or Canada the following additional provisions apply:

    1.  we shall have the right but not the duty to investigate, defend or settle any such "claim" brought against the "insured";

    2.  if we elect not to investigate, defend or settle any such "claim", the "insured" shall, under our supervision, arrange for such investigation and defense thereof as is reasonably necessary, and subject to our prior authorization, shall effect such settlement thereof as we and the "insured" deem expedient;

    3.  we will reimburse the "insured" for the reasonable cost of such investigation and defense and the amount of any settlement or judgment in excess of the Deductible amount stated in the Declarations, all subject to and within the Limits of Liability stated in the Declarations; and

    4.  such reimbursement shall be made in United States currency at the rate of exchange prevailing on the date the judgment is rendered or the date that the amount of the settlement is agreed upon or the date expenditure is made.

## IV.  EXCLUSIONS

This insurance does not apply to "claim(s)" or "loss(es)" based upon or arising out of:

A.  any "pollution event" known to any "insured's" principal, partner, director, officer, or employee with responsibility for environmental affairs, legal affairs or risk management unless prior to the effective date of coverage for the "covered location" such "pollution event" was disclosed to us and endorsed onto the policy;

B.  any dishonest, fraudulent, intentional or malicious act or those of a knowingly wrongful nature, or the intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by or at the direction of the "insured", except that this exclusion will not apply to an "insured" who did not commit, participate in, or have knowledge of any of the acts described;

C.  any "claim" made:

    1.  by an "insured" against any other "insured"; or

    2.  against an "insured" by an entity or individual:

        a.  that wholly or partially controls, owns, operates or manages an "insured"; or

        b.  that is controlled, owned, operated or managed by the "insured";

D.  any obligation of the "insured" which could have been brought in whole or in part under a workers compensation, disability benefits or unemployment compensation or any similar law;

E.  any "pollution event" on, at, under, or coming from a "covered location" which commences after the "covered location" is sold, leased to others, given away, abandoned, or for which operational control has been relinquished by the "insured";

F.  the liability of others assumed by an "insured" under any contract or agreement; however, this exclusion does not apply to liability for "loss(es)" that would have attached to an "insured" by operation of law in the absence of such contract or agreement;

G.  fines, penalties, or treble damages;

H.  implementation of any "closure plan" or "post closure plan";

I.   goods or products designed, manufactured, sold, handled, distributed, or supplied by the "insured" or by others trading under their name or under license from the "insured" once the goods or products are removed away from the "covered location";

J.   injury to any employee, contract employee or leased personnel of an "insured" if such injury occurs during and in the course of said employment; or to the spouse, child, brother or sister of any employee, contract employee or leased personnel of an "insured" as a consequence of said employment; or to any obligation of an "insured" for indemnity or contribution to another because of "loss" arising out of such injury in the course of employment;

K.   any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion;

L.   any "pollution event" or "loss(es)" on, at, under or coming from any location to which the "insured" arranges for, sends or has sent materials for treatment, recycling, reclamation, storage or disposal unless endorsed onto the policy;

M.   any naturally occurring substance on, at, under, or coming from the "covered location(s)", in its unaltered form, or altered solely through naturally occurring processes or phenomena;

N.   any asbestos containing material and lead based paint which are or were part of any fixtures, buildings, or improvements on the "covered location(s)";

O.   any costs for the reconstruction, repair, removal, maintenance, replacement, upgrading, installation, or rebuilding of any personal property, fixtures, buildings, or processes at a "covered location" or any other improvement, site enhancement, or routine maintenance on, within, or under a "covered location";

P.   the ownership, entrustment, maintenance, use, operation, loading or unloading of any "automobile", aircraft, vessel or rolling stock beyond the boundaries of the "covered location(s)", unless endorsed onto the policy;

Q.   any "underground storage tank", whether active, abandoned or removed, known to any "insured's" principal, partner, director, officer, or employee with responsibility for environmental affairs, legal affairs or risk management of any "insured", unless endorsed onto the policy;

R.   (a) any coverage for "loss(es)" including "bodily injury", "property damage" or "claim expense(s)";

     (1) With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

     (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

     (b) Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

     (c) Under any Liability Coverage, to "cleanup costs" or "loss(es)" including "claim expense(s)" resulting from "hazardous properties" of "nuclear material", if:

     (1) The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

     (2) The "nuclear material" is contained in "spent fuel", or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

     (3) The "cleanup costs", "loss(es)", "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, it territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste matter (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. "Property damage" includes all forms of radioactive contamination of property.

**V. EXTENDED REPORTING PERIODS**

   A. You shall be entitled to an automatic extended reporting period without additional charge upon termination of coverage as defined in this section. This period starts at the end of the "policy period" and lasts for sixty (60) days.

   B. In addition to the automatic extended reporting period, you shall be entitled to purchase an extended reporting period of up to three (3) years in duration, except in the event of nonpayment of premium. The charge for an extended reporting period of up to three years in duration shall not be more than one hundred percent (100%) of the premium per "policy period". The extended reporting period of up to three years in duration starts when the automatic extended reporting period set forth in the above paragraph ends.

   C. Upon payment of the additional premium, we shall issue an endorsement providing for an extended reporting period of up to three years in duration, provided that you:

     1. make a written request for such endorsement which we receive within sixty (60) days after termination of coverage as defined herein; and

     2. pay the additional premium when due. If such additional premium is paid when due, the extended reporting period may not be canceled by us, provided that all other terms and conditions of the policy are met.

   D. The "claim" first reported within the automatic extended reporting period and the extended reporting period endorsement, if purchased in accordance with this section, shall be deemed to have been made on the last day of the "policy period" and coverage shall apply under this policy provided that:

     1. the "pollution event" commenced subsequent to a retroactive date, if any, and before the end of the "policy period"; and

     2. with respect to the extended reporting periods, you have not purchased any other insurance to replace coverage provided by this policy; and

3.  the "claim" is otherwise covered under the terms and conditions of this policy.

E.  For the purpose of the automatic extended reporting period and the extended reporting period endorsement, termination of coverage means:

1.  any cancellation or nonrenewal of this policy, except for fraud or material misrepresentation, material change in the nature or extent of the risk, or non-payment of premium; or

2.  with respect to a specific "covered location":

    a.  the deletion of such "covered location" from this policy by us upon your request; or

    b.  the sale, leasing to others, giving away, abandonment, or relinquishing of operational control of such "covered location" by an "insured".

F.  If the automatic extended reporting period or an extended reporting period endorsement is in effect, we will provide the Each Claim Limit of Liability subject to that which is remaining in the Total for all Claims Limit of Liability shown in the Declarations to this policy, but only for "claim(s)" first reported to us pursuant to the policy during the automatic extended reporting period or extended reporting period endorsement. The purchase of an extended reporting period does not reinstate or increase the Limit of Liability shown in the Declarations as applicable to the Total for all Claims.

G.  Notwithstanding CONDITIONS (Section VIII.) paragraph I., OTHER INSURANCE - and Section D.2, above, the insurance afforded for "claims" first reported during the automatic extended reporting period and the extended reporting period endorsement is excess over any other valid and collectible insurance available under policies in force during the automatic extended reporting period and the extended reporting period endorsement.

## VI. LIMITS OF LIABILITY AND DEDUCTIBLE

### A.  EACH CLAIM LIMIT OF LIABILITY

Our liability for each "claim", including "loss(es)" and applicable "claim expense(s)", shall not exceed the amount set out in the Declarations as the Each Claim Limit of Liability. We shall not be obligated to pay any "loss(es)" or applicable "claim expense(s)" or undertake or continue the defense of any "claim" after the Each Claim Limit of Liability set out in the Declarations has been tendered into court or exhausted by payments for "claim(s)", "loss(es)" or applicable "claim expense(s)".

### B.  TOTAL LIMIT OF LIABILITY

Subject to paragraph A., above, our total liability for all "claim(s)", including "loss(es)" and applicable "claim expense(s)", shall not exceed the amount set out in the Declarations as the Total for all Claim(s) Limit of Liability. We shall not be obligated to pay any "loss(es)" or applicable "claim expense(s)" or undertake or continue the defense of any "claim", pending or future, after the Total for all Claims Limit of Liability set out in the Declarations has been tendered into court or exhausted by payments for "claim(s)", "loss(es)" or applicable "claim expense(s)".

### C.  DEDUCTIBLE

The Deductible amount set out in the Declarations is your obligation and applies to each "claim" and shall include all "loss(es)" and applicable "claim expense(s)" up to the Deductible amount for each "claim". The Deductible amount does not erode the Limits of Liability. We may advance payment for "loss(es)" and "claim expense(s)" within the Deductible. You shall promptly reimburse us for advancing any element of "loss(es)" and "claim expense(s)" paid by us within your Deductible.

If you agree with us to use "mediation" to resolve a "claim" for which a defense has been provided and a "claim" is resolved thereby, the Deductible set out in the Declarations shall be reduced by 50% for that "claim" only, subject to a maximum reduction of $25,000.

### D.  MULTIPLE INSUREDS, CLAIMS, LOSSES, CLAIMANTS, POLLUTION EVENTS, AND POLICY PERIODS

#### 1.  MULTIPLE INSUREDS OR CLAIMANTS

The inclusion of more than one "insured" in the making of a single "claim" or the bringing of a single suit regarding the same "pollution event" shall not increase the Limits of Liability stated in the Declarations, neither shall the making of "claims" or the bringing of suits by more than one person or organization increase the Limits of Liability stated in the Declarations.

2.  **MULTIPLE CLAIMS**

Two or more "claims" arising out of the same, interrelated, associated, repeated or continuous "pollution event(s)" or a series of related "pollution events" shall be considered a single "claim", and shall be subject to one Limit of Liability and only one Deductible as stated in the Declarations, regardless of the number of "insured(s)" or claimants involved or the number or amount of , "losses" or "policy periods" in which "pollution events", or "losses" occurred and regardless of the number of "pollution events" alleged to have occurred.

3.  **MULTIPLE POLICY PERIODS**

Any "loss" or "claim" which takes place over two or more "policy periods" shall be subject to one Limit of Liability and one Deductible as stated in the Declarations. All such "claims" for "loss(es)", whenever made, shall be considered first made on the date on which the earliest "claim" was first made and reported to us and the Limits of Liability applicable to that "policy period" shall apply.

4.  **CLAIMS ARISING FROM POTENTIAL CLAIMS**

Any "pollution event" which results in a "claim" in a subsequent uninterrupted renewal "policy period" shall be subject to the Each Claim and Total for all Claims Limits of Liability applicable to the "policy period" in effect when the "pollution event" was reported to us.

5.  **CLAIMS REPORTED IN THE EXTENDED REPORTING PERIODS**

The automatic extended reporting period and the extended reporting period, if purchased by you, shall not serve to increase or reinstate the Limits of Liability set out in the Declarations to the policy. The Limits of Liability shall be that which remains at the end of the "policy period".

E.  **EXHAUSTION OF LIMITS AND TRANSFER OF DUTIES**

When the Each Claim or Total for all Claims Limit of Liability described above has actually been exhausted in the payment of "loss(es)" or "claim expense(s)", we will:

1.  notify the "insured", in writing, as soon as possible, that such limits have been exhausted and our duty to defend "claim(s)" under INSURING AGREEMENT (Section I.) has also ended; and

2.  commence and cooperate in the transfer of control to any appropriate "insured" of all "claim(s)" which are subject to that limit and which are reported to us before that limit is exhausted.

## VII. CLAIM PROVISIONS

A.  **NOTICE OF CLAIM**

In the event of a "claim", the "insured" shall give written or oral notice to us as soon as possible containing particulars sufficient to identify an "insured" and reasonably obtainable information with respect to:

1.  the time, place, "covered location" and explanation of the "pollution event" including how and when the "insured" first became aware of the "pollution event" and the "claim";

2.  the names and addresses of any injured parties and available witnesses;

3.  any and all investigative or engineering reports, data or information about the "pollution event" or "loss"; and

4.  any and all other relevant information about the "claim", "pollution event" or "loss".

If a "claim" is made against an "insured", the "insured" shall immediately forward to us every demand, notice, summons, complaint, order or other process received by an "insured" or its representatives.

B.  **NOTICE OF POTENTIAL CLAIM**

If during the "policy period" the "insured" discovers a "pollution event" which may reasonably be expected to give rise to a "claim" under the policy, the "insured" shall provide written notice to us, as soon as possible, during the "policy period" containing particulars sufficient to identify an "insured" and reasonably obtainable information with respect to:

1.  the time, place, "covered location", and explanation of the discovery, including how and when the "insured" first became aware of the "pollution event";

2.  the names and addresses of any injured parties and available witnesses;

3.  any and all investigative or engineering reports, data or information about the "pollution event" or "loss"; and

4.  any and all other relevant information about the "pollution event" or "loss";

and any subsequent "claim" arising from the reported "pollution event" made against the "insured" and reported to us, pursuant to paragraph C., below, during an effective renewal "policy period" or extended reporting period issued by us for which coverage is provided by this policy shall be deemed, for the purposes of this insurance, to have been made on the date on which written notice of the "pollution event" was first received by us.

## C.  NOTICE TO US

All "claim(s)" and potential "claim(s)" shall be reported to:

Zurich U.S.
Environmental Claims Unit
1400 American Lane
Schaumburg, Illinois 60196-1056
Attention: Managing Account Specialist –
Environmental Specialties

or any other address as substituted by us by endorsement onto the policy.

In the event of oral notice, the "insured" agrees to furnish a written report to us as soon as possible.

## D.  SELECTION OF DEFENSE COUNSEL

1.  In the event an "insured" is entitled by law to select independent counsel to defend the "insured" at our expense, the attorney's fees and all other litigation expenses we must pay to that counsel are limited to rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims in the community where the "claim" arose or is being defended.

    Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending claims similar to the one pending against an "insured" and to require such counsel to have errors and omissions insurance coverage. The "insured" agrees that such counsel will respond to our request for information regarding the "claim" in a timely manner. Furthermore, an "insured" may at any time, by its signed consent, waive its right to select independent counsel.

2.  The "insured" shall have the option to consent to our choice of legal counsel, which consent shall not be unreasonably withheld or denied.

## E.  SETTLEMENT

The "insured" shall not admit liability or settle any "claim" without our written consent.  If we recommend a reasonable settlement of a "claim", the "insured" shall have the opportunity to concur, such concurrence is not to be unreasonably withheld.  If we recommend a reasonable settlement of a "claim":

1.  for an amount within the Deductible and the "insured" refuses to concur with such settlement, then we shall not be liable for any "loss(es)", including "claim expense(s)", in excess of the Deductible; or

2.  for a total amount in excess of the balance of the Deductible and the "insured" refuses to concur with such reasonable settlement acceptable to the claimant, then our liability for "loss(es)", including "claim expense(s)", shall be limited to that portion of the recommended settlement and the costs, charges and expenses incurred as of the date of the "insured's" refusal which exceed the Deductible and fall within the Limit of Liability.

## F.  VOLUNTARY PAYMENTS

No costs, charges or expenses shall be incurred, or liability assumed, by an "insured", without our written consent, which shall not be unreasonably withheld or denied.

Notwithstanding the foregoing, an "insured" may take such "emergency action(s)" as reasonably necessary to prevent or mitigate further damage or "loss(es)", provided the "insured" provides notice to us within ninety-six (96) hours.

In the event of oral notice, the "insured" agrees to furnish a written report to us as soon as possible.

## VIII. CONDITIONS

**A. ASSIGNMENT** – Assignment of interest under this policy shall not bind us until our consent is endorsed thereon, which consent shall not be unreasonably withheld.

**B. AUDIT AND INSPECTION** – We shall be permitted upon reasonable prior notice to audit the "insured's" financial books and records at any time during the "policy period" and within three years after the final termination of this policy, as far as they relate to the subject matter of the policy. We shall also be permitted upon reasonable prior notice, to inspect, sample and monitor on a continuing basis your "covered location(s)" and operations. Neither our right to make inspections, sample and monitor, nor the actual undertaking thereof, nor any report thereon shall constitute an undertaking, on behalf of us or others, to determine or warrant that a "covered location", or operation is safe, healthful or conforms to acceptable engineering practice or is in compliance with any law, rule or regulation. We do not manage or exercise control over any "covered location".

**C. BANKRUPTCY** – Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**D. CANCELLATION** – This policy may be canceled by you by surrender to us or any of our authorized brokers, or by mailing to us written notice stating when the cancellation shall be effective. This policy may be canceled by us by mailing to you, at the address shown in this policy, a notice stating when thereafter (not less than sixty (60) days for fraud or material misrepresentation or ten (10) days for non-payment of premium) such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period". Delivery of such written notice either by you or by us shall be equivalent to mailing.

**E. CHANGES** – Notice to any broker or knowledge possessed by any broker or by any other person shall not effect a waiver or change in any part of this policy or stop us from asserting any right under the terms of this policy. The terms of this policy shall not be waived or changed, except by endorsement issued to form a part of this policy.

**F. CHOICE OF LAW** – In the event an "insured" and we dispute the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the "insured" agrees with us that the law of the State of New York shall apply without giving effect to any conflicts or choice of law principles. In the event the "insured" agrees with us to resolve the dispute by arbitration, any such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**G. COOPERATION** – The "insured" agrees with us to assist and cooperate in the fulfillment of the policy's terms, including the investigation, adjustment, defense or settlement of "claim(s)".

**H. DECLARATIONS** – By acceptance of this policy, you agree that the statements in the Declarations and Application are your agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between you and us or any of yours or our brokers relating to this insurance.

**I. OTHER INSURANCE** – The insurance provided under this policy is primary insurance, except when stated in the Declarations or by Endorsement to apply in excess of, or contingent upon the absence of, other insurance. When this insurance is primary and the "insured" has other insurance which is stated to be applicable to the "claim" or "loss" on an excess basis, the amount of our liability under this policy shall not be reduced by the existence of such excess insurance.

When both this insurance and other insurance apply to the "claim" or "loss" on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the "claim" or "loss" than that set out in the Declarations or the following contribution provision, whichever method is lower:

    **a.** Contribution by Equal Shares – Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "cleanup costs" or "loss" remains, whichever occurs first; or

    **b.** Contribution by Limits – Each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**J. SEPARATION OF INSUREDS** – Except with respect to the Limits of Liability and any rights and duties specifically assigned to you, this insurance applies:

    **1.** as if each Named Insured were the only Named Insured; and

    **2.** separately to each "insured" against whom "claim" is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this policy by one "insured" shall not prejudice the interest of coverage for another "insured" under this policy.

L. **SOLE AGENT** - The first Named Insured shall act on behalf of all "insureds" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or non-renewal, and the exercise of the rights provided in the extended reporting periods clause.

M. **SUBROGATION** - In the event of any payment under this policy, we shall be subrogated to all an "insured's" rights of recovery against any person or organization. An "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The "insured" shall do nothing to prejudice such rights.

Any recovery obtained through subrogation, after expenses incurred in such subrogation are deducted by the party bearing the expense, shall be applied proportionately to you and us for actual payments as a result of judgment, settlement or defense of a "claim".

Endorsement #1

# California Amendatory Financial Assurance
# Department of Toxic Substances and Control Endorsement


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 18331000 | None | None |

Named Insured and Mailing Address:

Technichem, Inc.
4245 Halleck Street
Emeryville, CA 94608

Producer:

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

Environmental Impairment Liability Insurance Policy – Claims Made and Reported Coverage

PLEASE READ THIS ENDORSEMENT CAREFULLY.

TO THE EXTENT THAT ANY PROVISION OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED CONFLICTS WITH ANY PROVISION OF THIS ENDORSEMENT, THE PROVISIONS OF THIS ENDORSEMENT SHALL APPLY AND SUPERCEDE, HOWEVER, ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all terms, exclusions and conditions of the policy that the following amendments shall apply to the Policy solely for the "covered location(s)" identified in the Schedule in this Endorsement and solely provided that the "claim" is one for which the "insured" is required to demonstrate financial assurance pursuant to 22 CCR 66264.147 or 22 CCR 66265.147. The Policy is amended as follows:

I.   The third paragraph of the preamble to the policy shall be deleted and replaced with the following:

The payment of "loss(es)" reduces the Limits of Liability of this insurance. However, if the applicable Limit of Liability is exhausted by payment of "loss(es)", we shall not be liable for "claim expense(s)" or for the amount of any judgment or settlement.

II.  INSURING AGREEMENT (Section I), shall be amended to include the following statement:

Coverage pursuant to this paragraph is effective solely provided that the "claim" is one for which the "insured" is required to demonstrate financial assurance pursuant to 22 CCR 66264.147 or 22 CCR 66265.147.

III. DEFENSE, INSURING AGREEMENT (Section I), is deleted and replaced by the following:

Copyright © 2002 by Zurich Insurance Company

STF-EIL-420-A CA(10/02)
Page 1 of 4

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means – graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems – without written permission of the Zurich Insurance Company.

**DEFENSE**

We shall have the right and duty to assume the adjustment, defense and settlement of any "claim" brought by or on behalf of any federal, state or local regulatory agency, or by or on behalf of a third party seeking payment for "loss(es)" to which this insurance applies.

Our duty to adjust, defend and settle all "claim(s)" to which this insurance applies, pending and future, ends when the applicable Limits of Liability have been tendered into court or exhausted by payment of "loss(es)".

We shall have the right to determine if, and for what amount, any "claim" covered pursuant to this Endorsement shall be settled, within the limits of coverage as set forth in LIMITS OF LIABILITY AND DEDUCTIBLE (Section VI.) as amended by this Endorsement, without the consent of the "insured".

IV. **DEFINITIONS** (Section II.), paragraph K. shall be deleted and replaced by the following:

   K. "Loss(es)" means compensatory damages or legal obligations arising from "bodily injury" or "property damage".

V. **LIMITS OF LIABILITY AND DEDUCTIBLE** (Section VI.), subsections A., B., C. and E. are deleted and replaced by the following:

   A. **EACH CLAIM LIMIT OF LIABILITY**

     Our liability for each "claim", including "loss(es)", shall not exceed the amount set out in the Declarations as the Each Claim Limit of Liability. We shall not be obligated to pay any "loss(es)" or "claim expense(s)" or continue defense of a "claim" after the Each Claim Limit of Liability set out in the Declarations has been tendered into court or exhausted by payments for "loss(es)".

   B. **TOTAL LIMIT OF LIABILITY**

     Subject to Paragraph A above, our Total Limit of Liability for all "claims", including and "loss(es)", shall not exceed the amount set out in the Declarations as the Total for All Claims Limit of Liability. We shall not be obligated to pay any "loss(es)" or "claim expense(s)" or undertake or continue the defense of any "claim", pending or future, after the Total for all Claims Limit of Liability set out in the Declarations has been tendered into court or exhausted by payments for "loss(es)".

   C. **DEDUCTIBLE**

     The Deductible amount set out in the Declarations is your obligation and applies to each "claim" and shall include all "loss(es)" and "claim expense(s)" up to the Deductible amount for each "claim". The Deductible amount does not erode the Limits of Liability nor does it erode "claim expenses" incurred in the adjustment, defense and settlement of a "claim". If the "insured" is unable or unwilling to pay any or all amounts of the Deductible, we shall pay such amounts. You shall promptly reimburse us for advancing any element of "loss(es)" and "claim expense(s) paid by us within your Deductible.

   E. **EXHAUSTION OF LIMITS AND TRANSFER OF DUTIES**

     When the Each Claim or Total for all Claims Limit of Liability described above has actually been exhausted in the payment of "loss(es)", we will:

     1.  notify the "insured", in writing, as soon as possible, that such limits have been exhausted and our duty to defend "claim(s)" under INSURING AGREEMENT (Section I.) has also ended; and

     2.  commence and cooperate in the transfer of control to any appropriate "insured" of all "claim(s)" which are subject to that limit and which are reported to us before that limit is exhausted.

VI. **DECLARATIONS, Item 8. RETROACTIVE DATE** is deleted in its entirety.

VII. **EXCLUSIONS** (Section IV.) shall be amended as follows:

   A. **Exclusion A.** shall be deleted in its entirety.

Copyright © 2002 by Zurich Insurance Company

STF-EIL-420-A CA(10/02)
Page 2 of 4

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

B.  Exclusion B. shall be amended to include the following:

However, this exclusion shall not apply if such non-compliance results in "loss(es)" which were neither expected or intended from the standpoint of the "insured".

C.  Exclusion E. shall be deleted and replaced with the following:

Any "pollution event" on, at, under or coming from a "covered location" which commences after the "covered location" is sold, leased to others, given away, abandoned or for which operational control has been relinquished by the "insured", and this exclusion shall only apply if the California Environmental Protection Agency Department of Toxic Substances Control has given notice that coverage is no longer required.

D.  Exclusion N. shall be deleted in its entirety.

E.  Exclusion Q. shall be deleted in its entirety and replaced with the following:

Any "underground storage tank" whose existence is known by the "insured" as of the effective date of the policy and which is located on the "covered location" unless such "underground storage tank" is specifically identified by you to the California Environmental Protection Agency Department of Toxic Substance Control and to us as a portion of the facility for which you are required by 22 CCR 662264.147 or 22 CCR 66265.147 to demonstrate financial assurance.

F.  Exclusion S. shall be added to the policy:

S.  any liability for which the "insured" is not required by 22 CCR 66264.147 or 22 CCR 662265.147 to demonstrate financial assurance.

VIII.   CLAIM PROVISIONS (Section VII.) is amended as follows:

A.  Paragraph B. NOTICE OF POTENTIAL CLAIM is deleted in its entirety.

B.  Paragraph E. SETTLEMENT is deleted in its entirety.

IX.  CONDITIONS (Section VIII.) is amended as follows:

A.  Paragraph D. CANCELLATION shall be deleted in its entirety and replaced with the following:

D.  CANCELLATION

This endorsement may be cancelled by you by surrender thereof to us or any of our authorized agents or by mailing to us written notice stating when thereafter (not less than 60 days after notice of cancellation is received by the California Environmental Protection Agency Department of Toxic Substance Control, as evidenced by the return receipt of a registered or certified mail receipt), this cancellation shall be effective. This Endorsement may be cancelled by us by mailing to you at the address shown in the Policy, written notice stating when thereafter (not less than 60 days after notice of cancellation is received by the California Environmental Protection Agency Department of Toxic Substance Control, as evidenced by the return receipt of a registered or certified mail receipt), such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period". Delivery of such written notice either by you or by us shall be equivalent to mailing. If you cancel, earned premium shall be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro-rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

B.  Paragraph F. CHOICE OF LAW is deleted and replaced with the following:

F.  ARBITRATION - In the event the "insured" agrees with us to resolve the dispute by arbitration, any such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

C.  Paragraph N. CONCEALMENT AND FRAUD is added:

Copyright © 2002 by Zurich Insurance Company

STF-EIL-420-A CA(10/02)
Page 3 of 4

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

N. **CONCEALMENT AND FRAUD** - If, whether before or after the commencement of a "pollution event" or a "claim" is first made, the Named Insured has willfully concealed or misrepresented any fact or circumstance material to the granting of coverage under this Policy, the description of the "covered location", the interest of the "insured" therein, or the operations of the "insured", the "insured" shall reimburse us all amounts incurred by us for "loss" or "claim expense(s)". The "insured" shall also reimburse us all amounts that we incur, including but not limited to attorneys' fees, in relation to our pursuit of rights to seek such reimbursement.

D. Paragraph O. REIMBURSEMENT is added:

O. **REIMBURSEMENT** - All terms, conditions, and limitations in the Policy to which this Endorsement is attached shall remain in full force and effect as binding between you and us. You agree to reimburse us for any payment made by us on account of any breach of the terms of the Policy, or for any payment that we would not have been obligated to make under the provisions of the Policy except for the agreements contained in this Endorsement.

X. **DECLARATIONS**, Item 5., shall be amended to include the following schedule of "covered locations" and Per Claim and Total for All Claims Limits of Liability, and applicable to coverage provided by this Endorsement only:

## SCHEDULE

| Covered Locations | Limits of Liability |
|---|---|
| 4245 Hallock Street, Emeryville, CA. 94608 | $1,000,000/$1,000,000 |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.**

Signed by: _____    Date _____
　　　　　Authorized Representative

Copyright © 2002 by Zurich Insurance Company

STF-EIL-420-A CA(10/02)
Page 4 of 4

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

Endorsement # 3

# Exclusion For Pollution Events Originating Beyond the Boundaries of a Covered Location



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 13331000 | None | None |

**Named Insured and Mailing Address:**

Technichem, Inc.
4245 Halleck Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Environmental Impairment Liability Insurance Policy - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions and conditions of the policy that:

EXCLUSIONS (Section IV.) is amended by the addition of the following exclusion:

S.   any "pollution event" that originates from a source beyond the boundaries of a "covered location";

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____

    Authorized Representative         Date

Copyright © 1999 by Zurich Insurance Company

STP-EIL-397-A CW  (8/99)
Page 1 of 1

All rights reserved.  No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich American Insurance Company.

Endorsement # 4

# Onsite Third Party Bodily Injury and
# Personal Property Damage Endorsement


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 18351000 | None | None |

**Named Insured and Mailing Address:**

Technichem, Inc.
4245 Halleck Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

Environmental Impairment Liability Insurance Policy - Claims Made and Reported Coverage

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions and conditions of the policy that

It is hereby agreed that Section IV., Exclusion F. is deleted in its entirety and replaced with the following:

F.    arising at the Covered Location(s) designated in the Declarations, even if such Loss is incurred to avoid or mitigate Environmental Impairment which may be covered under this Policy, however, this exclusion does not apply to Claims arising from Bodily Injury or Personal Property Damage to a Third Party and only if such Bodily Injury and Personal Property Damage is unexpected and unintended from the standpoint of the Insured.

For the purpose of this endorsement, the following definitions shall apply:

Personal Property Damage shall mean physical damage to tangible property under the control of the Third Party where the tangible property is neither attached to real property nor can it be severed from real property without injury to the real property. Personal Property Damage does not include Cleanup Costs.

Third Party shall mean any person or entity who is not an Insured or an affiliate or subsidiary of the Insured, or an employee thereof.

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____          _____
          Authorized Representative                Date

STF-EIL-MAN- xxx (xx/xx/xx)
Page 1 of 1

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights herein may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

Endorsement # 5

# Fungus Exclusion



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 18331000 | None | None |

**Named Insured and Mailing Address:**

Technichem, Inc.
4245 Holleck Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Environmental Impairment Liability Insurance Policy - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions and conditions of the policy, that EXCLUSIONS (Section IV.), is amended by the addition of the following exclusion:

S.    whether caused directly or indirectly, by:

　　1.　any "fungus(i)" or "spore(s)", or

　　2.　any substance, vapor or gas produced by or arising out of any "fungus(i)" or "spore(s)" unless endorsed onto this policy.

For the purposes of this exclusion, the following definitions are added:

1.　"Fungus(i)" includes, but is not limited to:

　　a.　any form or type of mold, mushroom or mildew,

　　b.　any other fungal structure, and

　　c.　any volatile organic compounds, mycotoxins, allergenic proteins or other substances or gases produced by or arising out of any mold, mushroom, mildew, fungal structure or "spore(s)".

2.　"Spore(s)" means any reproductive body produced by or arising out of any "fungus(i)".

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____    _____
　　　　　　Authorized Representative　　　　　　　　　　Date

Copyright © 2001 by Zurich Insurance Company

STF-ENVL-1420-A CW(8/01)
Page 1 of 1

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

Endorsement # 6

# Onsite Cleanup Costs Exclusion


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 18331000 | None | None |

**Named Insured and Mailing Address:**

Technichem, Inc.
4245 Hallock Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Environmental Impairment Liability Policy - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions and conditions of the policy that:

EXCLUSIONS (Section IV.) is amended by the addition of the following exclusion:

S.    "cleanup costs" on, at or under a "covered location(s)".

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____        _____
             Authorized Representative                           Date

Copyright © 2000 by Zurich Insurance Company

U-EIL-408-A CW (2/00)
Page 1 of 1

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

Endorsement # 7

# Coverage Restriction -- City of Merced


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 29-64-146-05 | 12/16/2003 | 12/16/2004 | 12/16/2003 | 12351000 | None | None |

**Named Insured and Mailing Address:**

Technichem, Inc.
4245 Halleck Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St., #1000
San Francisco, CA 94111

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

Environmental Impairment Liability Insurance Policy - Claims Made and Reported Coverage

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions and conditions of the policy that

It is hereby understood and agreed that no coverage will be provided for "claims" arising from City of Merced v. R. A. Fields, et al (USDC Civ-F-92-5627-REC DLB).

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____

     Authorized Representative       Date _____

Copyright © 2001 by Zurich Insurance Company

STF-EIL-MAN- xxx (xx/xx/xx)
Page 1 of 1

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

Endorsement # 8

# Extended Reporting Period



## ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| PLC 2964146-05 | 12/16/2003 | 12/16/2004 | 12/16/2004 | 18331-000 | $15,000 | |

**Named Insured and Mailing Address:**

TECHNICHEM, INC.
4245 Halleck Street
Emeryville, CA 94608

**Producer:**

Swett & Crawford
201 California St. #1000
San Francisco, CA 94111-5012

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

Environmental Impairment Liability Insurance Policy – Claims Made and Reported Coverage

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof, we agree with you, subject to all terms, exclusions and conditions of the policy that we will extend the time for reporting "claim(s)" after termination of this policy. This period of extension shall be effective from 12:01 am on 02/16/2005 to 12:01 am on 02/16/2008.

This endorsement provides coverage for "claim(s)" by third parties that would have been covered under the terms of this policy had they been reported before your coverage ended or terminated. Coverage shall be provided by this endorsement provided that:

1. the "pollution event" commenced subsequent to a retroactive date, if any, and before the end of the "policy period"; and

2. you have not purchased any other insurance to replace coverage provided by this endorsement; and

3. the "claim" is otherwise covered under the terms and conditions of this policy.

We will provide the Each Claim Limit of Liability subject to that which is remaining in the Total for all Claims Limit of Liability shown in the Declarations to this policy, but only for "claim(s)" first reported to us pursuant to the policy during the extended reporting period endorsement. The purchase of an extended reporting period does not reinstate or increase the Limit of Liability shown in the Declarations as applicable to the Total for all Claims.

We have the right to cancel this endorsement according to the policy terms if you fail to pay any premium when due.

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _____
Authorized Representative

Date _____

Copyright © 1999 by Zurich Insurance Company

STF-EIL-209-A CW (8/99)
Page 1 of 1

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.