**United States District Court**
For the Northern District of California

Revised June 24, 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**GUIDELINES FOR TRIAL AND FINAL PRETRIAL CONFERENCE**

**IN CIVIL JURY CASES**

**BEFORE THE HONORABLE CHARLES R. BREYER**

**FINAL PRETRIAL CONFERENCE**

1.      Please do not prepare a joint pretrial conference statement.  Nor should counsel invest time on deposition designations or extracts from interrogatories or requests for admissions at the pretrial conference stage.  Instead, please file SEVEN calendar days in advance of the final pretrial conference the following:

(a)      In lieu of preparing a joint pretrial conference statement, the parties shall meet, confer and prepare a joint proposed final pretrial order, signed and vetted by all counsel, that contains:  (i) a brief description of the substance of claims and defenses which remain to be decided, (ii) a statement of all relief sought, (iii) all stipulated facts, (iv) a list of all factual issues which remain to be tried, stating the issues with the same generality/specificity as any contested elements in the relevant jury instructions, all organized by counts, (v) a joint exhibit list in numerical order, including a brief description of the exhibit and Bates number, a column for when it is offered in evidence, a column for when it is received in evidence, and a column for any limitations on its use, and (vi) each party's separate witness list for its case-in-chief witnesses (including those appearing by deposition) providing, for all such witnesses other than an

individual plaintiff and an individual defendant, a short statement of the substance of his/her testimony and, separately, what, if any, non-cumulative testimony the witness will give. If non-cumulative testimony is not spelled out, then the Court will presume the witness is cumulative. Time limits will be set based on the non-cumulative descriptions. Items (v) and (vi) should be appendices to the proposed order. The proposed order should also state which issues, if any, are for the Court to decide, rather than the jury. The objective is to convert the proposed order to a final order with the benefit of any discussion at the final pretrial conference.

(b)  A joint set of proposed instructions on substantive issues of law arranged in a logical sequence. If undisputed, an instruction shall be identified as "Stipulated Instruction No. ____ Re _____," with the blanks filled in as appropriate. Even if stipulated, the instruction shall be supported by citation. If disputed, each version of the instruction shall be inserted together, back to back, in their logical place in the overall sequence. Each such disputed instruction shall be identified as, for example, "Disputed Instruction No. ____ Re _____ Offered by _____," with the blanks filled in as appropriate. All disputed versions of the same basic topic shall bear the same number. Citations with pin cites are required. Any modifications to a form instruction must be plainly identified. If a party does not have a counter version and simply contends no such instruction in any version should be given, then that party should so state (and explain why) on a separate page inserted in lieu of an alternate version. With respect to form preliminary instructions, general instructions, or concluding instructions, please simply cite to the numbers of the requested instructions in the current edition of the *Ninth Circuit Manual of Model Jury Instructions (Civil)*, except the instruction on a simplified statement of the case (No. 1.2 in the 2001 edition). Other than citing the numbers, do not include preliminary, general or concluding instructions in the packet.

(c) A separate memorandum of law in support of each party's disputed instructions, organized by instruction number. Please quote exact, controlling passages from the authorities and give pin cites. No ellipses, please.

(d) A joint special verdict form with the questions arranged in a logical sequence.

(e) A joint set of proposed voir dire questions supplemented as necessary by separate requests. Keep these to a minimum, please. The Court, in its discretion, may use a juror questionnaire.

(f) Any motion *in limine*, with the opposition, filed as follows: At least TWENTY calendar days before the conference, serve, but do not file, the moving papers. At least TEN calendar days before the conference, serve the oppositions. When the oppositions are received, the moving party should collate the motion and the opposition together, back to back, and then file the paired sets at least SEVEN calendar days before the conference. Each motion should be presented in a separate memo and numbered as in, for example, "Plaintiff's Motion in Limine No. 1 to Exclude . . . ." Please limit motions *in limine* to circumstances that really need a ruling in advance. Usually five or fewer motions per side is sufficient. Each motion should address a single topic, be separate, and contain no more than seven pages of briefing per side. Advance permission will be needed for more or longer motions. **Please** be sure to three-hole punch the chambers copies so they can go into a trial notebook.

(g) Trial briefs are optional but most helpful to the Court on any controlling issues of law.

2. The joint proposed final pretrial order and instructions shall be submitted on a 3-1/2-inch disk in WordPerfect 10.0 format, as well as in hard copies. All hard-copy submissions should be three-hole punched on the left, so the chambers' copy can be put in binders.

3.	At the final pretrial conference, the above submissions shall be considered and argued. The parties must take notes on rulings and submit a joint summary of all rulings in proposed order format.

## PRETRIAL ARRANGEMENTS

4.	Should a daily transcript and/or real-time reporting be desired, the parties shall make arrangements with Debra Campbell, Supervisor of the Court Reporting Services, at (415) 522-2079, at least ten calendar days prior to the trial date.

5.	During trial, counsel may wish to use overhead projectors, laser-disk/computer graphics, poster blow-ups, models or specimens of devices. If monitor screens are used, there should be a single large screen (not multiple small screens) viewable by the jury, the Court and the witness. It should be large and bright enough to be seen placed on the opposite side of the courtroom from the jury. If counsel cannot conveniently see the screen, then counsel may have a small monitor at counsel table. If both overhead projector and video equipment are to be used, then a single projection screen is best, thus requiring a projection-type video rather than a monitor. If video equipment is used, equipment capable of instantly accessing the relevant portions of transcripts and graphics should be used (rather than, for example, raw video tapes made at depositions which take time to forward or to rewind). Equipment should be shared by all counsel to the maximum extent possible. The Court provides no equipment other than an easel. The United States Marshal requires a court order to allow equipment into the courthouse. For electronic equipment, either know how to fix it or have a technician handy at all times. For overhead projectors, have a spare bulb. Tape extension cords to the carpet for safety. Please take down and store the equipment (in the courtroom) at the end of each court day. Please work with Barbara Espinoza (415-522-2062) on courtroom-layout issues.

## SCHEDULING

6.	The normal trial schedule will be 8:30 a.m. to 1:30 p.m. (or slightly longer to finish a witness) with two fifteen-minute breaks and ending before lunch. Counsel must arrive by 8:15 a.m., or earlier as needed for any matters to be heard out of the presence of the jury.

4

Please be prepared to start with the jury at 8:30 a.m. The trial week is Monday through Thursday except for any Wednesday afternoon and all federal court holidays.

**THE JURY**

7. No later than on the first day of trial, counsel shall jointly submit a simplified statement of the case to be read to the jury during voir dire as part of the proposed jury instructions. Unless the case is extremely complex, this statement should not exceed one page. The Court will usually conduct the voir dire.

8. In civil cases, there are no alternate jurors and the jury is selected as follows: All potential jurors are called and seated in the jury box and courtroom benches in the order their names are drawn from the drum. This placement will now determine their order in the selection process. The Court will then conduct its voir-dire of the entire panel. Once this questioning is accomplished, the Court will advise counsel at side-bar which potential jurors it would excuse for cause. This determination is preliminary only. Counsel are then permitted to conduct limited voir-dire of the entire panel. Once all voir-dire is completed, the Court will then address all challenges for cause and excuse those potential jurors who have been successfully challenged. The Court will then advise counsel as to the number of jurors which will be seated. After a short recess, each side may exercise its allotment of peremptory challenges. Challenges must be made in writing by each side at the same time (without knowing how the other side is exercising its challenges). Write down the names and numbers of the candidates to be stricken. The eight (or such other size as will constitute the jury) surviving the challenge process with the lowest numbers become the final jury. For example, if the plaintiff strikes 1, 5 and 7 and the defendant strikes 2, 4 and 9, then 3, 6, 8, 10, 11, 12, 13 and 14 become the final jury. If both sides strike one or more of the same jurors, then the eight unstruck jurors with the lowest numbers will be seated. If more than eight jurors (or less) are to be seated, then the starting number will be adjusted. So too if more than a total of six peremptories is allowed. Once the jury selection is completed, the jurors' names will be read again and they will be seated in the jury box and sworn. The Court may alter the procedure in its discretion.

9. Jurors may take notes. Stenopads will be distributed at the beginning of each trial. The pads will remain in the jury room at the end of each day. Jurors will be instructed on the use of notes both in the preliminary and final jury instructions.

**OPENING STATEMENTS**

10. Each side will have a predetermined time limit for its opening statement. Counsel must cooperate and meet and confer to exchange any visuals, graphics or exhibits to be used in the opening statements, allowing for time to work out objections and any reasonable revisions. Be prepared for opening statements as soon as the jury is sworn.

**WITNESSES**

11. Throughout the trial, all counsel are entitled to know a firm order of witnesses for the next two full court days and the exhibits that will be used on direct examination (other than for impeachment of an adverse witness). Within 24 hours of such notice, all other counsel shall provide any objections to such exhibits and shall provide a list of all exhibits to be used with the same witness on cross-examination (other than for impeachment). This requires that the first such notice be provided before trial actually begins. All such notice should be provided in writing.

12. Always have your next witness ready and in the courthouse. Failure to have the next witness ready or to be prepared to proceed with the evidence will usually constitute resting. If counsel plans to read in a transcript of a deposition anyway, it is advisable to have a deposition prepared and vetted early on to read just in case.

13. A witness or exhibit not listed in the joint pretrial statement may not be used without good cause. This rule does not apply to true rebuttal witnesses (other than experts). Defense witnesses are normally case-in-chief witnesses, not "rebuttal" witnesses.

14. When there are multiple parties, counsel are responsible for coordination of the cross-examination to avoid duplication.

15. Stand at or near the podium to ask questions, straying only to point out material on charts or overheads.

**EXPERTS**

16. A recurring problem in trials is the problem of expert witnesses trying to go beyond the scope of their expert reports on direct examination. FRCP 26(a)(2) and FRCP 37(c) limit experts to the opinions and bases contained in their timely reports (absent substantial justification or harmlessness). The Court regularly enforces these rules. FRCP 26(a) even requires that any "exhibits to be used as summary of or support for the opinions" be included in the report. Accordingly, at trial, the direct testimony of experts will be limited to the matters disclosed in their reports. Omitted material may not ordinarily be added on direct examination. This means the reports must be complete and sufficiently detailed. Illustrative animations, diagrams, charts and models may be used on direct examination only if they were part to the expert's report, with the exception of simple drawings and tabulations that plainly illustrate what is already in the report, which can be drawn by the witness at trial or otherwise shown to the jury. If cross-examination fairly opens the door, however, an expert may go beyond the written report on cross-examination and/or re-direct examination. By written stipulation, of course, all sides may relax these requirements.

17. As to damages studies, the cut-off date for *past damages* will be as of the expert report (or such earlier date as the expert may select). In addition, the experts may try to project *future damages* (*i.e.*, after the cut-off date) if the substantive standards for future damages can be met. With timely leave of Court or by written stipulation, the experts may update their reports (with supplemental reports) to a date closer to the time of trial.

18. The case management order will already have set out the timetable for expert reports.

**USE OF DEPOSITIONS TO IMPEACH AND SHORT READ-INS**

19. Depositions can be used at trial to impeach a witness testifying at trial or, in the case of a party deponent, "for any purpose." Please follow the following procedure;

    (a) On the first day of trial, be sure to bring the original and clean copies of any deposition(s) for which you are responsible. Any corrections must be readily available. If you are likely to need to use the deposition during a witness examination, then give

7

the Court a copy with any corrections at the outset of your examination. This will minimize delay between the original question and the read-ins of the impeaching material. Opposing counsel should have their copy immediately available.

(b) When you wish to read in a passage, simply say, for example: "I wish to read in page 210, lines 1 to 10 from the witness' deposition." A brief pause will be allowed for any objection.

(c) The first time a deposition is read, state the deponent's name, the date of the deposition, the name of the lawyer asking the question, and if it was FRCP 30(b)(6) deposition, please say so. The first time a deposition is read, the Court will give an appropriate explanation to the jury about depositions.

(d) When reading in the passage, state "question" and then read the question exactly. Then state "answer" and then read the answer exactly. Stating "question" and "answer" is necessary so the jury and the court reporter can follow who was talking at the deposition.

(e) Please do **NOT** ask, "Didn't you say XYZ in your deposition?" The problem with such a question is that the "XYZ" rarely turns out to be exactly what the deponent said. Instead, ask for permission to read in a passage, as above, and read it in exactly, so that the jury can hear what was actually testified to.

(f) Subject to Rule 403, party depositions may be read in whether or not they contradict (and regardless of who the witness is on the stand). For example, a short party deposition excerpt may be used as foundation for questions for a different witness on the stand.

(g) Rather than reading the passage, counsel are free to play an audiovisual digitized version of the passage, but counsel must have a system for immediate display of the precise passage.

**DEPOSITION DESIGNATION**

20. The following procedure applies only to witnesses who appear by deposition. It does not apply to live witnesses whose depositions are read in while they are on the stand. To

save time and avoid unnecessary work, it is not necessary to make all deposition designations before trial. Instead, the following steps should be followed.

      (a)    To designate deposition testimony, photocopy the cover page, the page where the witness is sworn, and then each page from which any testimony is proffered. Line through or x-out any portions of such pages not proffered. Also, line through objections or colloquy unless they are needed to understand the question. Please make sure any corrections are interlineated and that references to exhibit numbers are conformed to the trial numbers. Such interlineations should be done by hand. The finished packet should then be the actual script and should smoothly present the identification and swearing of the witness and testimony desired. The packet should be provided to all other parties at least five calendar days before it will be used in court. For the rare case of voluminous designations, more lead time will be required. Please be reasonable.

      (b)    All other parties must then promptly review the packet and highlight in yellow any passages objected to and write in the margin the legal basis for the objections. If any completeness objection is made, the objecting party must insert into the packet the additional passages as needed to cure the completeness objection. A completeness objection should normally be made only if a few extra lines will cure the problem. Such additions shall be highlighted in blue and an explanation for the inclusion shall be legibly handwritten in the margin. Please line out or x-out any irrelevant portions of the additional pages.

      (c)    The packets, as adjusted, must then be returned to the proffering party, who must then decide the extent to which to accept the adjustments. The parties must meet and confer as reasonable. Counsel for the proffering party must collate and assemble a final packet that covers the proffer and all remaining issues. At least two calendar days before the proffer will be

9

used, the proponent must provide the Court with the final packet, with any objected-to portions highlighted and annotated as described above. If exhibits are needed to resolve the objections, include copies and highlight and tag the relevant passages. Alert the Court on the record that the packet is being provided and whether any rulings are needed. Tag all passages that require a ruling. The Court will then read the packet and indicate its rulings in the margin in a distinctive manner. Ordinarily, argument will not be needed.

(d) Counter designations must be made by providing a packet with the counter-designated passages to the proponent at the same time any objections to the original proffer are returned to the first proffering party, who must then supply its objections in the same manner.

(e) When the packet is read to the jury, the examiner reads the questions (and any relevant colloquy) from the lectern and a colleague sits in the witness stand and reads the answers. When a video-taped deposition is to be played instead, the packets must still be prepared, as above, in order to facilitate rulings on objections. The video should omit any dead time, long pauses, and objections/colloquy not necessary to understand the answers.

## REQUESTS FOR ADMISSIONS AND INTERROGATORIES

21. Please designate responses to requests for admissions and interrogatory answers in the same manner and under the same timetable as depositions.

## EXHIBITS

22. Prior to the final pretrial conference, counsel must meet and confer in person over all exhibit numbers and objections and to weed out duplicate exhibits. Please be reasonable.

23. Use numbers only, not letters, for exhibits, preferably the same numbers as were used in depositions. Blocks of numbers should be assigned to fit the need of the case (*e.g.*, Plaintiff has 1 to 100, Defendant A has 101 to 200, Defendant B has 201 to 300, etc.). A single exhibit should be marked only once. If the plaintiff has marked an exhibit, then the defendant should not re-mark it. Different versions of the same document, *e.g.*, a copy with additional

1  handwriting, must be treated as different exhibits. To avoid any party claiming "ownership" of an
2  exhibit, all exhibits shall be marked and referred to as "Trial Exhibit No. _____," not as
3  "Plaintiff's Exhibit" or "Defendant's Exhibit." If an exhibit number differs from that used in a
4  deposition transcript, however, then the latter must be conformed to the new trial number if and
5  when the deposition testimony is read to the jury (so as to avoid confusion over exhibit numbers).
6  The jury should always hear any given exhibit referred to by its unique number. You cannot have
7  competing versions of the same exhibit numbers.

8        24.     The exhibit tag shall be in the following form:

```
           UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA

                TRIAL EXHIBIT 100

          CASE NO. _____

          DATE ENTERED_____

          BY _____
                          DEPUTY CLERK
```

18  Counsel preferably will make the tag up in a color that will stand out (yet still allow for
19  photocopying) but that is not essential. Place the tag on or near the lower right-hand corner or, if a
20  photograph, on the back. Counsel should fill in the tag but leave the last two spaces blank.
21  Deposit your exhibits with the deputy clerk (Barbara Espinoza) on the first day of trial. The tags
22  can be adhesive or stapled on.

23        25.     Counsel must consult with each other and with the deputy clerk at the end of
24  each trial day and compare notes as to which exhibits are in evidence and any limitations thereon.
25  If there are any differences, counsel should bring them promptly to the Court's attention.

26        26.     In addition to the record copies of exhibits, one or more bench binders
27  containing a copy of each side's exhibits must be provided to the Court on the first day of trial.
28

11

Each exhibit must be separated with a label divider (an exhibit tag is unnecessary for the bench set). Please use 1-1/2-inch binders with locking rings. (Heavier binders are too hard to handle.)

27.  Before the case goes to the jury, counsel must confer with the clerk to make sure the exhibits to go into the jury room are all in evidence and in good order. Counsel may, but are not required to, jointly provide a revised list of all exhibits actually in evidence (and no others) stating the exhibit number and a brief, non-argumentative description (*e.g.*, letter from A. B. Case to D. E. Frank, dated August 17, 1999). This list may go into the jury room to help the jury sort through exhibits.

28.  Publication must be by poster blow-up, overhead projection, or such other method as is allowed in the circumstances. Poster blow-ups should be about 3' x 4' to be seen by all jurors. Any overhead projector should have a powerful light to help in jury viewing. Counsel must have a practical means for all important documents to be published to the jury. It is permissible to highlight, circle or underscore in the enlargements so long as it is clear that it was not on the original. Exhibit notebooks for the jury will not be permitted without prior permission by the Court.

**OBJECTIONS**

29.  Counsel shall stand when making objections and shall not make speeches. State the legal basis only. Speak up promptly.

30.  There can only be one lawyer per witness per party for all purposes, including objections.

31.  Side bar conferences are discouraged. The procedure described above should eliminate the need for most side bars.

32.  To maximize jury time, counsel must alert the Court in advance of any problems that will require discussion outside the presence of the jury, so that the conference can be held before court begins or after the jury leaves for the day.

## TIME LIMITS

33. Ordinarily, the Court shall set fixed time limits at the final pretrial conference. All of your examination time (whether direct, cross, re-direct or re-cross) for all witnesses must fit within your time limit and you may allocate it as you wish. Opening and closing time limits shall be separately considered. Counsel must keep track of everyone's usage. At the end of each day, counsel must confer over the time used and the time remaining for all parties and advise the Court daily. The Court will also try to keep track. The time taken at a side bar or on objections will still be charged to the examining party unless otherwise ordered.

## SETTLEMENTS AND CONTINUANCES

34. Shortly before trial or a final pretrial conference, counsel occasionally wish jointly to advise the clerk that a settlement has been reached and seek to take the setting off calendar but it turns out later that there was only a settlement "in principle" and disputes remain. Cases, however, cannot be taken off calendar in this manner. Unless and until a stipulated dismissal or judgment is filed or placed on the record, all parties must be prepared to proceed with the final pretrial conference as scheduled and to proceed to trial on the trial date, on pain of dismissal of the case for lack of prosecution or entry of default judgment. Only an advance continuance expressly approved by the Court will release counsel and the parties from their obligation to proceed. If counsel expect that a settlement will be final by the time of trial or the final pretrial conference, they should notify the Court immediately in writing or, if it occurs over the weekend before the trial or conference, by voice mail to the deputy courtroom clerk. The Court will attempt to confer with counsel as promptly as circumstances permit to determine if a continuance will be in order. Pending such a conference, however, counsel must prepare and make all filings and be prepared to proceed with the trial.

35. Local rule 40-1 provides that jury costs may be assessed as sanctions for failure to provide the Court with timely written notice of a settlement. Please be aware that any settlement reached on the day of trial, during trial, or at any time after the jury or potential jurors have been summoned without sufficient time to cancel, will normally require the parties to pay juror costs.

CHANGE OF TRIAL DATE

36. Because of scheduling conflicts with other cases on the docket, the Court retains the discretion to change the trial date, either by way of <u>advancement</u> or continuance. In the event the trial date is changed, the parties may seek an adjustment of the time limits for compliance with the requirements of this order, which shall be effective only upon Court approval.

**IT IS SO ORDERED.**

Dated: November 30, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE